Nancy A. WHITE, et al.

v.

UNITED MINE WORKERS OF AMERICA, et al.

Civ. No. Y–84–3063.

United States District Court, D. Maryland.

Oct. 30, 1985.

George E. Meng, James M. Greenan, and Cleo P. Braver, Landover, Md., for plaintiffs.

James H. Hulme, Russell M. Blau, Rockville, Md., William F. Hanrahan, and Catherine H. Mitchell, Washington, D.C., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The plaintiffs are the mother and sister of Katherine Craven, employed for many years by the United Mine Workers of America Health and Retirement Funds, and also her beneficiaries under the retirement plan provided by the defendants. Plaintiffs claim that they are entitled to $78,528 under the pension plan rather than the $7,997 offered by the defendants. They allege the award of the lower sum is a breach of contract, and, in the alternative, they allege a failure of the defendants to properly apprise Katherine Craven of her rights and obligations under the pension plan.

The facts, undisputed, are as follows. Katherine Craven began working for the UMW on January 18, 1951. Her deteriorating health forced her to stop working on December 26, 1979, but she was kept on the payroll by virtue of her accumulated disability leave, sick leave, and vacation leave. On June 1, 1980, she qualified for Social Security disability benefits, and by so qualifying became eligible for disability retirement under the UMWA Pension Plan.

On January 3, 1981, having been apprised of the various options open to her under the terms of the Pension Plan, she chose the retirement benefit known as the "life benefit with 120 payments guaranteed" (excerpt 3 below). On January 5th, her accumulated leave time expired and her employment with the defendant was terminated. On this date, she received severance pay equal to 20 weeks salary, and the 20 week "severance pay period" began (see excerpt 2 below).

Katherine Craven died in April of 1981. Her pension benefits (a monthly payment of $654.00) were scheduled to begin on May 29, 1981, the end of the 20 week severance pay period. The sole point at issue is whether the plaintiffs, as beneficiaries of Katherine Craven are entitled to $7,997 (12 monthly payments) or $78,528 (120 monthly payments).

■ With regard to the question of breach of contract, defendants and plaintiffs both rely on the following passages which are excerpted from § 4 (Benefits) of

UMWA 1974 Pension Trust Employee's Pension Plan (joint exhibit A).

*Excerpt 1;* § 4.1 (Retirement benefits)

C (Disability retirement)

A person who ... qualifies for a disability pension under the Social Security Act ... shall be entitled to receive a disability retirement pension for life. The amount of the monthly benefit shall be ... based on the Participant's Period of Service at his termination of employment...

The disability retirement pension shall begin on the first day of the first month coincident with or following the date as of which he first becomes entitled (whether prospectively or retroactively) to his Social Security disability pension. (p. 4–6).

*Excerpt 2;* § 4.1, H (Commencement of benefits)

Benefits under the Plan shall be distributed as otherwise stated herein, except that:

(i) If a Participant separates from service and is eligible for a severance allowance, benefits hereunder shall not commence until the expiration of a period of time following his separation from service equal to the number of weeks of salary taken into account in calculating the Participant's severance allowance (the "severance pay period") ... (p. 4–11, 12).

*Excerpt 3;* § 4.2 (Forms of benefits)

B (Optional forms of benefits)

ii (Life benefit with 120 payments guaranteed)

This form of benefit is payable monthly to the Participant for life and, in the event the Participant dies before receiving 120 monthly payments, the Participant's beneficiary shall receive monthly payments until the total of the monthly payments to the Participant and the beneficiary is 120. (p. 4–14).

*Excerpt 4;* § 4.2, B

... The election by a Participant of any option permitted under Section 4.2(B) shall be null and void if either the Participant or his designated beneficiary dies before benefits commence ... (p. 4–14).

*Excerpt 5;* § 4.3 (Benefits in the event of death prior to commencement of retirement benefits)

B (Lump sum benefit)

In the event a Participant dies prior to commencement of the receipt of the retirement benefits, his designated beneficiary shall receive an amount equal to the sum of 12 monthly retirement payments ... (p. 4–18).

Defendants' argument is straightforward. Excerpt 1 sets the date Katherine Craven was eligible for disability retirement. Excerpt 2 shows that payments would have begun at the end of the severance pay period if she had lived until then. Excerpt 3 describes the type of benefit chosen by her, but excerpt 4 shows that that choice is inoperative because she died before payments began. Excerpt 5 describes the lump sum payment (in this case $7,997) which is made in the event the participant dies before benefit payments begin. This, of course, is what happened here.

Plaintiffs argue that they are entitled to $78,528 (120 months times $654.40) based on the language found in excerpt 3. They claim that the provision quoted in excerpt 4 does not apply because at the time of death, benefits had in fact begun, even though no payments had been made. This argument is based on the language found in the second paragraph of excerpt 1, which says that payments begin the month after eligibility is established for the Social Security pension.

Plaintiffs are simply in error. If one looked *only* at the wording of the second paragraph of excerpt 1, their position would make some sense—that payments should have begun in July of 1980. But the language of excerpt 2 spells out a very clear cut exception to the provision in excerpt 1, namely that when the participant is eligible for severance pay (as here) the retirement payments do not begin until the end of the severance pay period.

Even the language in excerpt 1 works against the plaintiffs. The first paragraph of excerpt 1 provides that the monthly benefit is based on the length of service at the *termination of employment.* But when Craven became eligible for the pension, she was still an employee. Plaintiffs' argument would require the defendants to pay retirement benefits to someone who has not retired.

Plaintiffs try to salvage their case with the following quote from the Pension Plan, § 4.1 (Retirement benefits), part D (Deferred retirement):

> ... The deferred retirement pension shall begin on the first day of the first month following the Employee's actual retirement. (p. 4–7).

The plaintiffs argue that this same language could have been used in the section on disability retirement, changing the word "deferred" to "disability." This would have been done, say the plaintiffs, if the authors of the Plan had truly wanted the disability pension to begin only after the actual termination of employment. But the fact is that the provision in excerpt 2 already ensures that benefits won't begin until after employment ends. The above quoted sentence *is* necessary, however, in the section on deferred retirement. This is because those eligible for deferred retirement are *not* eligible for severance pay (exhibit C, p. 35). Thus, without the above quoted sentence, employees choosing deferred retirement would be able to receive retirement benefits while still on the payroll. In short, the plaintiffs are making an issue over a commendable lack of redundancy.

Thus, with respect to the claim of breach of contract, the plain language of the Plan, as well as the clear intent of its authors, compels granting summary judgment for the defendants.

The Court likewise finds no merit in the contention that Katherine Craven was not properly informed on the provisions in the Plan. In September of 1980, and again in November, defendants provided her with a Summary Plan Description (SPD) (Exhibit B). The only question is whether or not the SPD "reasonably" apprised her of her rights and obligations under the Plan. Having read the SPD, the Court concludes that it is as clear as one could reasonably expect such a document to be.

Accordingly, summary judgment will be entered for the defendants. The findings of fact and conclusions of law stated herein are in accordance with the requirements of Rule 52, F.R.Civ.P. whether or not specifically stated.